**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BWI LIQUIDATING CORP., et al., | ) ) | Case No. 09-12526  (MFW) |
| Debtors. | ) | Jointly Administered |
| _____ | ) ) | |
| BWI LIQUIDATING CORP., et al., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adv. No. 10-50787  (MFW) |
| CITY OF RIALTO, a California Municipal Corporation and RIALTO UTILITY AUTHORITY, a California Joint Powers Authority | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion filed by the City of Rialto and Rialto Utility Authority (collectively "Rialto") to dismiss for lack of subject matter jurisdiction, abstain, or transfer venue of this adversary proceeding commenced by BWI Liquidating Trust ("the Plaintiff"), which asserts a claim for breach of contract of a Water Services Agreement ("WSA"). For the reasons set forth below, the Motion will be granted, in part, and the adversary will be dismissed for lack of jurisdiction.

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

I.   BACKGROUND

BWI designed, built and implemented systems for the treatment of contaminated groundwater, industrial process water, and air streams from municipal and industrial sources.  Rialto is a city located in California that owns a groundwater well, identified as Chino Well No. 1 (the "Well").

On December 23, 2003, the Debtors and Rialto entered into the WSA.  Under the WSA, the Debtors were responsible for designing and installing facilities for the treatment of groundwater from the Well that met water quality standards.  At the time of the contract, the Debtors were incorporated in California; three years after entering into the contract, the Debtors changed their state of incorporation to Delaware.

On July 16, 2009, the Debtors filed a petition for relief under chapter 11 of the Bankruptcy Code in Delaware.  On the following day, the Debtors filed a motion for approval of a sale of substantially all their assets.  That same day, the Debtors informed Rialto of the bankruptcy filing and advised Rialto that unless the WSA was renegotiated, the Debtors would reject it within 30 days of completion of the contemplated sale of their assets.  The Debtors stated that they would continue regular service of the equipment until the decision to assume or reject the contract was officially made.  In response, Rialto advised the Debtors that it had no interest in renegotiating the contract

and acknowledged that the WSA would be terminated 30 days after completion of the sale.

As a result of that communication, the Debtors asserted that Rialto had materially breached and terminated the WSA. On December 30, 2009, the Debtors sent Rialto a written demand for payment of two outstanding invoices as well as additional damages for the alleged wrongful termination.

On January 15, 2010, the Debtors' Plan of liquidation was confirmed by this Court. Under the confirmed Plan, the Plaintiff was assigned all of the Debtors' claims and causes of action. The Plaintiff commenced this adversary proceeding on March 11, 2010, seeking damages for: (1) breach of contract for the failure to pay the outstanding invoices; (2) breach of contract for the wrongful termination of the contract; (3) quantum merit; and (4) unjust enrichment.

On April 12, 2010, Rialto filed a motion to dismiss the Complaint for lack of subject matter jurisdiction or alternatively for abstention or transfer of venue to California. Briefing is complete and the matter is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding. <u>See, e.g.</u>, <u>Chicot County Drainage Dist. v. Baxter State Bank</u>, 308 U.S.

371, 376-77 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

III. DISCUSSION

    A.   Subject Matter Jurisdiction

The motion to dismiss for lack of subject matter jurisdiction is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

A bankruptcy court may exercise jurisdiction over four categories of matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991).

Bankruptcy court jurisdiction is divided into "core" and "non-core" proceedings. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are core proceedings. In re Combustion Eng'g Inc., 391 F.3d 190, 225-26 (3d Cir. 2004). Cases under title 11 refers merely to the bankruptcy petition itself. See, e.g., Marcus Hook, 943 F.2d at 264. Proceedings arising under title 11 refers

to the steps within the case and to any sub-action within the case that may raise a disputed legal matter.  See, e.g., In re Wolverine Radio Co., 930 F.2d 1132, 1141 n.14 (6th Cir. 1991).  Proceedings arising in a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case.  See, e.g., Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996).  Proceedings that are merely related to a case under title 11, on the other hand, are non-core.  See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 162 (3d Cir. 2004).

Because this is an adversary proceeding and does not involve any steps or sub-action within the bankruptcy case, it does not fall under either of the first two categories.  With regard to arising under jurisdiction, the claims only involve state law breach of contract issues which would exist even outside the bankruptcy case.  Therefore, the parties agree that the only category under which the Plaintiff's claims may fall is "related to" jurisdiction.

The test for "related to" jurisdiction is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Exide Techs., 544 F.3d 196, 205-06 (3d Cir. 2008) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  "After

confirmation of a chapter 11 plan, however, the scope of the bankruptcy court's 'related to' jurisdiction diminishes." AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 323 (Bankr. D. Del. 2005) (citing Resorts, 372 F.3d at 164-65). Since there is no longer a bankruptcy estate that can be affected post-confirmation, the bankruptcy court will only exercise jurisdiction where a claim has "a close nexus to the bankruptcy plan or proceeding" and the matter at issue "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." Resorts, 372 F.3d at 168-69. See also EXDS, Inc. v. Richard Ellis, Inc. (In re EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006); AstroPower, 335 B.R. at 323.

In this case, the Plaintiff argues that there is a sufficiently close nexus between this adversary proceeding and the bankruptcy case because (1) the claims arose pre-confirmation, (2) the claims were incorporated into the Plan, which reserved jurisdiction over them, (3) the proceeds of the claims, if any, will benefit the estate's creditors, (4) the adversary proceeding was commenced shortly after the Plan's effective date, (5) this is a liquidating case rather than a reorganization, and (6) federal policy and consistency is fostered by having all actions in one central court.

### 1.   Claims Arose Pre-Confirmation

The Plaintiff asserts that the events giving rise to its claims, including the services provided by the Debtors and the alleged breach of contract, occurred before the Plan was confirmed.  (In fact, the services underlying the two invoices were performed pre-petition.)  The Plaintiff argues that because the claims could have been brought pre-confirmation, there is a "close nexus" to the Plan.

Rialto responds that when the conduct giving rise to the claims arose is not a factor in determining whether the cause of action has a close nexus to the bankruptcy plan.  Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 265 (3d Cir. 2007) (concluding that with respect to "related to" jurisdiction, the Pacor test does not apply to post-confirmation disputes and the "close nexus" test must be applied "regardless of when the conduct alleged in the complaint occurred.").  Therefore, the Court finds that the timing of the conduct alleged in the complaint is not a factor to be considered in determining whether there is a close nexus.

### 2.   Reservation of Jurisdiction in Plan

The confirmed Plan states that the "Bankruptcy Court shall retain jurisdiction . . . [t]o determine all . . . motions, adversary proceedings, contested matters, Causes of Action, and any other litigated matters instituted in the Chapter 11 Cases or

on Behalf of the Debtors. . . ." (Plan at § 10.1.b.) Also, the Plan defines the term "Causes of Action" to include "without limitation, any and all actions, causes of action, liabilities, Avoidance Actions, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands whatsoever, whether known or unknown, in law, equity or otherwise." (Id. at § 1.18.) The Plaintiff asserts that this language is sufficient to provide jurisdiction over this adversary.

Rialto responds that if such broad language was permitted to allow post-confirmation jurisdiction, it would potentially provide the Court with the "unending jurisdiction" that the Third Circuit sought to limit. Resorts, 372 F.3d at 167. Rialto asserts that the logic behind the Third Circuit's limitation of post-confirmation jurisdiction is that important litigation in a bankruptcy plan needs to be specifically identified so that creditors can consider "its effect when deciding whether to vote in favor of the Plan." Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Tech., Inc.), 330 B.R. 512, 525 (Bankr. D. Del. 2005).

Plan provisions that purport to preserve the bankruptcy court's jurisdiction are not alone sufficient to establish post-confirmation jurisdiction; instead the court must determine whether "a matter affects the interpretation, implementation,

consummation, execution, or administration of a confirmed plan. . . ." Resorts, 372 F.3d at 168-69.

A "close nexus" may be found where the plan specifically enumerates the cause of action. See, e.g., AstroPower, 335 B.R. at 325. To find a sufficiently close nexus, the plan must "specifically describe[] an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provide[] for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors. . . ." Id. Such specific language helps ensure that "bankruptcy court jurisdiction would not raise the specter of unending jurisdiction" post-confirmation. Id. See also Resorts, 372 F.3d at 176; Michaels v. World Color Press, Inc. (In re LGI, Inc.) 322 B.R. 95 (Bankr. D.N.J. 2005).

The Plaintiff argues that there is not a strict requirement that the cause of action be identified in the plan, but rather that if it is, it meets the close nexus test. Admitting that the Debtors' Plan does not contain specific language retaining jurisdiction over these claims, the Plaintiff asserts nonetheless that the Plan's broad retention of jurisdiction language is still sufficient. It contends that the claims in this adversary will affect the Plan's implementation, consummation and execution by potentially increasing the pool of cash available to creditors.

The Court disagrees with the Plaintiff and concludes a Plan must specifically describe a cause of action in order to retain "related to" jurisdiction.  Compare AstroPower, 355 B.R. at 324 (finding sufficient specificity where the Plan specifically retained jurisdiction over claims arising from the Debtor's sale of stock in Xantrax Technology, Inc.), and LGI, 322 B.R. at 97 (finding jurisdiction where the plan specifcally identified recovery of the casualty loss as an asset to be distributed to creditors), with Insilico, 330 B.R. at 512 (finding that while the complaint fell within the broad language of the plan, it lacked the required close nexus because it did "not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation.").

The Plaintiff argues nonetheless that because the Debtors sent a formal demand letter to Rialto regarding the claims now asserted, Rialto was on notice that jurisdiction over the claims was preserved under the Plan.  The Court finds that notice was an insufficient substitute for specific reference of the claims in the Plan.  While it may have put Rialto on notice, the rest of the creditors who voted on the Plan had no specific knowledge of the claims.

The Court concludes that where, as here, the Plan only broadly provided for retention of jurisdiction over causes of action, it provides no evidence of a sufficiently close nexus

with the bankruptcy proceeding to support post-confirmation jurisdiction.  Resorts, 372 F.3d at 167.

### 3. Proceeds of the Claims Will Benefit Creditors

The Plaintiff argues that the nexus between the claims and the bankruptcy case is sufficiently close because proceeds from the claims will increase recoveries for the creditors.

Rialto responds that the Third Circuit has rejected this argument, holding that "the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation."  Resorts, 372 F.3d at 171.

The Court must weigh the potential to increase recovery for creditors with other contributing factors, including whether the suit is post-confirmation and its relatedness to the Plan.  AstroPower, 335 B.R. at 324.  As noted, this adversary proceeding was filed post-confirmation and is unrelated to any specific provision of the Plan.  These two facts are the same factors the Third Circuit noted in Resorts when it concluded that the mere potential to increase the assets of the trust is insufficient to establish a close nexus.  372 F.3d at 169-70.  The Third Circuit noted that if these facts were enough, then the jurisdiction of the bankruptcy courts would be broader than Congress intended.  Id. at 170.  Therefore, the Court concludes that this factor is insufficient to establish post-confirmation jurisdiction.

4. <u>Timing of Action</u>

The Plaintiff argues that the relative timing of the commencement of the action to the Plan's effective date is an important factor supporting the finding of a close nexus. The Plaintiff relies on <u>Resorts</u>, which states that in some circumstances the length of time since confirmation may be relevant to whether a matter has a "close nexus" to a bankruptcy plan or proceeding. 372 F.3d at 171. In <u>Resorts</u>, the Court concluded that there was no "related to" jurisdiction over the dispute where the action was commenced approximately seven years after confirmation.

The Plaintiff contends that the thirty-eight day lapse between confirmation and filing of this adversary is notably shorter and thus should warrant retention of jurisdiction. The Plaintiff notes that had the Complaint been filed thirty-eight days earlier there would be no question that the Court has jurisdiction over the claims. Consequently, the Plaintiff urges the Court to consider substance over form and depart from a strict timing requirement.

The Third Circuit has stated, however, that there is a clear change in the bankruptcy court's jurisdiction post-confirmation. <u>Resorts</u>, 372 F.3d at 165 ("the scope of bankruptcy court jurisdiction diminishes with plan confirmation"). This Court is

bound by this jurisdictional distinction.[2]  Therefore, this factor cannot provide the Court with jurisdiction if a close nexus is not otherwise found.

     5.   <u>Liquidating not Reorganizing</u>

The Plaintiff argues that because the Plan is a liquidating plan rather than a plan of reorganization, it supports a finding of a close nexus.  See, e.g., <u>Street v. End of the Road Trust</u>, 386 B.R. 539, 545-46 (D. Del. 2008) (stating that "trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed," because a liquidating trust "cannot reenter the marketplace (unlike a reorganized debtor), and exists only until the debtor's remaining assets have been liquidated.") (<u>citing</u> <u>Boston Reg'l Med, Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr. Inc.)</u>, 410 F.3d 100, 106 (1st Cir. 2005)).

The Court rejects the Plaintiff's argument.  As the Third Circuit stated in <u>Resorts</u>, "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant.  Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended . . . ."  372 F.3d at 170.  See also <u>Grimes v. Graue (In</u>

---

[2] In addition, if the Plaintiff's argument were accepted, the Court would be faced with the task of determining how "close" is enough to give it jurisdiction.  As in sports, "close" is just not good enough.

13

re Haws), 158 B.R. 965, 971 (Bankr. S.D. Tex. 1993) (finding no post-confirmation jurisdiction where "[t]he only nexus to [the] bankruptcy case [was] that the plaintiff . . . [was] a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization"); Insilico, 330 B.R. at 525 (noting that "[t]he jurisdictional statutes apply without differentiating between liquidating and reorganizing debtors").  Therefore, regardless of whether the plan provides for liquidation or reorganization, the Court must consider the actual language of the Plan itself to determine if the action affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan.  Id.  As stated previously, the Plan language in this case did not specifically describe this cause of action and, therefore, does not satisfy the "close nexus" test.

      6.   Federal Policy

The Plaintiff contends that dismissal of this adversary undermines the policy of the Bankruptcy Code.  See, e.g., Boston Reg'l, 410 F.3d at 107 (holding that in a liquidating plan, "there exists a substantial policy interest in favor of adhering to the general rule governing related to jurisdiction: the strong federal policy in favor of the expeditious liquidation of debtor corporations and the prompt distribution of available assets to creditors").  The Plaintiff further asserts that this policy is

14

furthered by centralizing all aspects of the bankruptcy case into one court to promote the efficient and fair marshaling of the debtor's assets and the prompt distribution of those assets to creditors. Id. See also Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.), 715 F.2d 430, 435 (9th Cir. 1983); In re Cartridge Television, Inc., 535 F.2d 1388, 1390 (2d Cir. 1976). The Plaintiff contends that not retaining jurisdiction here would require it to file many separate, scattered state law actions across the country to recover various claims, risking the uncertainty of creditors being treated differently.

The Court agrees with the Plaintiff that the success of this adversary proceeding would promote the efficient distribution of trust assets to creditors. As stated previously, however, this factor is not enough to confer jurisdiction on this Court. Resorts, 372 F.3d at 170.

For the foregoing reasons, the Court concludes that it has no subject matter jurisdiction over the claims asserted post-confirmation by the Plaintiff because they are not sufficiently "related to" the bankruptcy case.

IV.   CONCLUSION

For the reasons set forth above, the Court will grant Rialto's motion to dismiss for lack of jurisdiction. As a

result, the Court need not consider the alternative relief (abstention or transfer) requested in Rialto's motion.

An appropriate order is attached.

Dated: September 28, 2010         BY THE COURT:

*Mary F. Walrath*
Mary F. Walrath
United States Bankruptcy Judge